## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

CHARLES KAMINSKI,

          Plaintiff,

v.

UNITED STATES OF AMERICA,

          Defendant.

Case No. 14-2630-DDC-JPO

## MEMORANDUM AND ORDER

Plaintiff Charles Kaminski brings this negligence action against defendant, the United States of America, under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671–2680. He seeks to recover damages for injuries which, he contends, he sustained when he fell on ice outside a post office in Bonner Springs, Kansas. This matter is before the court on defendant's Motion to Dismiss Complaint, or in the Alternative, Motion for Summary Judgment (Doc. 75). Plaintiff responded to defendant's motion (Doc. 79), and defendant has filed a reply (Doc. 80). For reasons explained below, the court denies the motion.

### I.    Uncontroverted Facts

The following facts have been stipulated by the parties in the Pretrial Order (Doc. 69), are uncontroverted, or, where controverted, are stated in the light most favorable to plaintiff, the party opposing summary judgment. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

#### *The Physical Layout of the Post Office's Exterior Environs*

The United States Postal Service's ("USPS") postal facility ("Post Office") in Bonner Springs, Kansas, is located at the intersection of East Second and Cedar Streets. East Second Street borders the Post Office on the northwest side, and Cedar Street borders it on the southwest

side.  The front of the Post Office runs parallel with Cedar Street.  Off-street parking is located on East Second Street.  There are four angled parking spaces and each is roughly 45 degrees to the East Second Street side of the Post Office.  A public sidewalk runs between the off-street parking area and the northwest wall of the Post Office.  The sidewalk is about eight feet wide, with sawcut joints every six feet.  The sidewalk slopes at a gradual 1 to 2% from northeast to southwest.  The cross slope is negligible.

An off-street parking lot is located behind the Post Office on the northeast side ("the rear parking lot").  The USPS parks its postal service vehicles in the rear parking lot.  The Post Office has four downspouts that discharge roof water onto the rear parking lot.  Two downspouts carry water from the loading dock canopy and two discharge water from the roof.  The downspout closest to the East Second Street sidewalk near the northwest corner of the Post Office building ("the northwest downspout") is approximately three feet from the sidewalk.  The northwest downspout discharges water directly onto the rear parking lot.  But, sometimes, water from the rear parking lot flows onto the sidewalk.

A nine inch curb separates the rear parking lot from the sidewalk.  The rear parking lot slopes generally to the northwest.  The elevation of the rear parking lot is about nine inches higher than the East Second Street sidewalk.  The curb tapers down flush to the pavement of the rear parking lot about 22 feet from the northwest corner of the building.  Water draining from the northwest downspout is intended to follow the nine inch curb on the rear parking lot and then flow across the sidewalk where the level of the rear parking lot and curb meet about eight and a half feet from the downspout.

### *Weather Conditions*

On Thursday, February 21, 2013, nine and a half inches of snow fell in Bonner Springs, Kansas. No snow fell in the Bonner Springs area on Friday, February 22, 2013. The National Weather Service recorded the following high and low temperatures from February 21, 2013 through February 25, 2013:

> Thursday, February 21, 2013: High 25°; Low 15°
> Friday, February 22, 2013: High 26°; Low 20°
> Saturday, February 23, 2013: High 29°; Low 4°
> Sunday, February 24, 2013: High 32°; Low 4°
> Monday, February 25, 2013: High 48°; Low 9°

Doc. 76-4 at 4.[1] At 7:00 a.m. on Sunday, February 24, the National Weather Service recorded seven inches of snow on the ground in Bonner Springs, Kansas. At 7:00 a.m. on Monday, February 25, the National Weather Service recorded five inches of snow on the ground.

### *Plaintiff's Fall*

On February 25, 2013, around 5:00 a.m., plaintiff left his home and drove to the Post Office to mail some letters. It was cold outside that morning. There was still a lot of snow on the ground from the snowfall a few days earlier. The snow was piled in different areas. The streets had been cleaned somewhat, but were not yet completely cleared of snow. The streets were clean enough for plaintiff to walk in them.

When plaintiff arrived at the Post Office, he parked in one of the off-street parking stalls on East Second Street. Plaintiff saw that the sidewalk outside the Post Office had a path down the middle of it that was wide enough for walking. It looked to plaintiff that the path on the sidewalk was clear of snow. Some snow was piled up along the edge of the path. It ran along

---

[1] The National Weather Service measures temperatures for the previous 24 hours ending at observation. The measurement period begins at 7:00 a.m. and ends at 7:00 a.m. the following day. So, the period for measuring the temperature on February 25, 2013 began at 7:00 a.m. on February 24 and ended at 7:00 a.m. on February 25. And, thus, the February 25 recorded high of 48° likely occurred on February 24, 2013, presumably during the daylight hours when temperatures were warmer.

the curbing between the sidewalk and the parking area along East Second Street.  This snow pile was small enough for plaintiff to step over.

As plaintiff stepped on the sidewalk outside the Post Office, he slipped on ice and fell to the concrete.  Plaintiff landed on his elbow and forearm.  He described his elbow and forearm as "clunk[ing] really hard when [he] fell down" making a "hard thunk."  Doc. 79-13 at 18.  But other than having a sore elbow and forearm, plaintiff did not apprehend any serious injuries immediately after his fall.

Plaintiff got up on his hands and knees, and then managed to get up on his feet.  He walked to the back of the Post Office to the loading dock.  When plaintiff fell, the Post Office had been closed since noon on Saturday, February 23, 2013.  But the lobby of the Post Office is open to the public 24 hours a day and available for customers to deposit mail, even when the weather is inclement.

At the loading dock, plaintiff saw USPS employee Matthew Lowe working inside the dock area.  Plaintiff told Mr. Lowe that he had fallen on the sidewalk, but that he was okay.  Plaintiff suggested to Mr. Lowe that he should treat the ice on the sidewalk so that no one else would fall.  Plaintiff did not know if he had fallen on ice that was created by:  (1) water that had emptied from the downspouts onto the sidewalk and had frozen, or (2) water from the melting snow piles along the sidewalk that had frozen.  Plaintiff did not look at the northwest downspout on the day he fell to determine if any water or ice was coming out of it.  After he reported his fall to Mr. Lowe, plaintiff went to his place of employment and worked the entire day.

At the Post Office, Mr. Lowe did not inspect the area where plaintiff fell immediately after he had learned about the fall from plaintiff.  Instead, Mr. Lowe unloaded mail from the vestibule area inside the Post Office to clear the area for the truck to unload additional mail.  Mr.

Lowe performed this task before he went outside the Post Office to clear a path and put salt on the sidewalk.

Plaintiff returned to the Post Office later that day to complain about his fall on the sidewalk. He spoke with Office-In-Charge ("OIC") Roy Sanderson. USPS employees told plaintiff that ice on the sidewalk in this area had been a problem for at least 10 years. But, before plaintiff's fall, USPS had not received any reports of injuries due to ice outside the Post Office.

After his fall, plaintiff continued to do his normal activities. He shoveled snow off of his sidewalk after a snowstorm in late February 2013 that produced more than 10 inches of snow. But later, plaintiff's injuries worsened. He sought medical attention for his injuries for the first time on June 3, 2013. Plaintiff now is restricted in his ability to perform household chores, to lift and rotate his arm, to lift heavy objects, and to work for extended periods of time.

### *Reporting of Plaintiff's Fall*

In 2013, the USPS required its employees to report all injuries that occurred to non-USPS employees on Post Office premises. To make a report, a USPS employee must input information into the Employee Health and Safety System ("EHS"). The EHS then generates an accident investigation worksheet—a Form 1700—and an accident report—a Form 1769. The USPS required the manager or supervisor of the employee or operation to report all accidents and occupational injuries and illnesses in EHS within 24 hours.

As described above, plaintiff reported his fall to USPS employee Matthew Lowe almost right after it occurred. Mr. Lowe did not ask plaintiff if he was injured by the fall. But Mr. Lowe testified that plaintiff told him that he was okay. When plaintiff returned to the Post Office later that same day to report his fall to OIC Roy Sanderson, Mr. Sanderson did not ask plaintiff if he was injured by the fall. Mr. Sanderson also did not make an accident report.

Instead, Mr. Sanderson did not submit an accident report about plaintiff's fall until June 11, 2013.  Kathreen Bollinger filled out the accident report forms for Mr. Sanderson based on information that Mr. Sanderson provided.  Mr. Sanderson did not have any notes or other written documentation about the accident to refer to when he talked to Ms. Bollinger.  Mr. Sanderson relied only on his memory when he reported the information to Ms. Bollinger.

The June 11, 2013 Form 1700 accident investigation worksheet lists the accident date as December 21, 2012.  It also states:  "In December 2012, around the 21st, or the last big snow storm during that month . . . ."  Doc. 76-12 at 3.  Similarly, the June 11, 2013 Form 1769 accident report provides the date of the accident as December 21, 2012.  And, it states that plaintiff's fall occurred "[i]n December 2012, around the 21st, or the last big snow storm during that month . . . ."  Doc. 76-13 at 3.  Mr. Sanderson recalls that it was "'sometime in December, around December' that Kaminski reported his fall 'because of how the weather was, you know during that time.'"  Doc. 69 ¶ 2.a.14.

### Plaintiff's Administrative Claim

On December 7, 2013, plaintiff signed an administrative claim form for his injury.  In Box 6 of the form, plaintiff identified the "date and day of accident" as February 27, 2013.  Doc. 76-10 at 2.  Plaintiff also included a "Basis of Claim" with his form.  *Id.* at 4.  It states that he slipped and fell "[o]n or about February 17, 2013."  *Id.*  When plaintiff filed this lawsuit, he stated in his Complaint that his fall occurred "[o]n or about February 27, 2013."  Doc. 1 ¶¶ 8, 15.  But, in July 2015, plaintiff responded to defendant's interrogatories by identifying the date of his fall as February 25, 2013.

USPS employee Matthew Lowe testified that he believes plaintiff's fall occurred on a Monday because typically he arrived early to work on Monday mornings and he was at work around 5:00 a.m. on the day plaintiff reported he had fallen.  February 25, 2013 was a Monday.

### Snow and Ice Removal

In February 2013, USPS relied on its own employees to remove snow and ice from the sidewalks outside the Post Office.  It did not use a third-party contractor to perform these tasks. Every employee who worked at the Post Office may have removed snow or treated ice on the sidewalks outside the Post Office on any given day.  The weather conditions and available personnel dictated which employee performed these tasks.  But, generally, USPS employees Roy Sanderson and Matthew Lowe removed snow and ice from the sidewalks outside the Post Office.

The Post Office had no written snow removal plan.  Employees removed snow and ice during working hours only, not after hours.  Mr. Sanderson testified that he removed snow from the sidewalks by shoveling a path on the East Second Street sidewalk following the curb bordering the parking area on East Second Street.  He would deposit the shoveled snow in a pile near the storm sewer next to the street.  Then, Mr. Sanderson would shovel the remaining snow in toward the building, creating a pile on the side of the building.  As these snow piles melted, they would create water on the sidewalks that sometimes turned to ice in freezing conditions.

Also, as the snow and ice melted on the roof, it created water that would run off the roof, through the gutter, down the spouts, and onto the sidewalk.  On occasion, this water would freeze and then form to ice on the sidewalk in freezing temperatures.  USPS employee Matthew Lowe testified that he did not put ice melt on the sidewalks either on Saturday or Sunday before plaintiff's fall on Monday, February 25, 2013, even though he had worked on that Saturday.

The Post Office's Supervisor's Safety Handbook requires supervisors to "ensure that [their] employees follow . . . general procedures to prevent potential slip, trip, or fall accidents." Doc. 79-5 at 18.  These procedures include keeping sidewalks in good repair and readily accessible and "report[ing] defective walks, steps, and parking surfaces so that repairs to eliminate tripping hazards can be made promptly."  *Id.* at 19.  The Supervisor's Safety Handbook also requires supervisors to "establish snow and ice removal plans where necessary."  *Id.* at 20. The Handbook instructs supervisors to "[p]rovide for reinspection and cleaning as often as necessary to handle driving snow and refreezing."  *Id.*

### Post Office Lease

The United States Postal Service leases the Post Office in Bonner Springs from Kenneth and Jean Wellborn.  The leased premises include the "Parking & Maneuvering" areas.  The lease agreement requires the USPS to "maintain the demised premises (including repair and replacement of items, if necessary), except for those items specifically made the responsibility of the Landlord in Paragraph 3 below."  Doc. 76-2 at 9.  The lease agreement also states:  "The responsibility of the [USPS] as stated herein will be fulfilled at such time and in such manner as the [USPS] considers necessary to keep the demised premises in proper condition."  *Id.*

Paragraph 3 of the lease agreement makes the landlord "responsible for maintenance of, repairs to, and, if necessary, replacement of . . . [a]ll common or joint use interior and exterior areas and common or joint use equipment and systems that may be included as part of this lease."  *Id.*  It also requires the landlord to maintain, repair, and, if necessary, replace "[a]ll parts of the roof system including but not limited to . . . gutters and downspouts."  *Id.*  The lease agreement assigns responsibility for cleaning gutters and downspouts as follows:  "The [USPS] will be responsible for regular cleaning of gutters and downspouts connected to the outer edge

(i.e., the eaves area) of the roof; Landlord will be responsible for regular cleaning of any other gutters, downspouts, troughs, scuppers, roof drains, etc." And, the lease agreement includes the following language about the landlord's maintenance responsibilities and the USPS' notice obligations:

[W]henever there is a need for maintenance, repair, or replacement which is the Landlord's obligation under this Maintenance Rider, the [USPS] will require the Landlord to rebuild or repair the premises as necessary to restore them to tenantable condition to the satisfaction of the [USPS]. The [USPS] will, except in emergencies, provide the Landlord with written notice stating a reasonable time period for completion of all necessary repairs.

*Id.*

Finally, the lease agreement requires USPS "to furnish and pay for the timely removal of snow and ice from the sidewalks, driveway, parking and maneuvering areas, and any other areas providing access to the postal facility for use by postal employees, contractors, or the public (including, but not limited to, stairs, handicap access ramps, carrier ramps, etc.) during the continuance of the Lease." *Id.* at 14.

### *Drainage and Downspouts at the Post Office*

The Post Office has had a downspout on the northwest corner of the building since at least 1981. Alletta Dickson served as the OIC at the Post Office for about 18 months, beginning in about 2010. Ms. Dickson testified that she had observed the way water flowed out of the northwest downspout during her tenure as OIC at the Post Office. In January 2011, Ms. Dickson reported a problem with ice forming on the sidewalk outside the Post Office. She recalled the water flowing from the northwest downspout into the rear parking lot. She said the water would then flow along the curbing between the sidewalk area and the rear parking lot and cross over the sidewalk area near the driveway entrance to the rear parking lot. The problem with the ice would occur near the driveway to the rear parking lot.

One month after plaintiff's fall, OIC Roy Sanderson submitted a report to the USPS requesting repair of the gutters on the rear of the Post Office.  The report read:  "Please investigate/repair gutters on the roof in the back of the building.  Client informed the melted snow on the roof goes into the gutters and should go out into the street.  The melted snow."  Doc. 79-7 at 2.  OIC Sanderson reported this problem because water was collecting near the northwest downspout in the rear parking area, creating a slipping hazard.  In response to OIC Sanderson's report, USPS noted:  "Problem excluded from Landlord Maintenance . . . USPS Maintenance Responsibility."  Doc. 79-7 at 3.

On January 26, 2011, the former OIC, Alletta Dickson, reported icy conditions on the sidewalk outside the Post Office.  She submitted a report with the following request:  "Repair/Investigate the rain gutter on the East side of the building.  Water/Ice is going onto the customer walkway and causing slip hazard."  Doc. 79-7 at 5.  In response to this request, a black downspout was installed on the rear of building, but it did not correct the problem.

At some point in time, the curb running between the rear parking lot and the East Second Street sidewalk was shortened.  With this change, the water would drain from the rear parking lot, across the sidewalk, and down to the street.  The water did not flow toward the mailbox located on the west side of the Post Office.

Generally, the northwest side of the Post Office was the first area to freeze and the last area to thaw based on its exposure to sunlight.  To determine whether any water flowing from the northwest downspout was instrumental in plaintiff's fall, one would have to know exactly what the conditions on the ground were like when plaintiff fell.  The presence of any sort of obstruction, such as ice, likely could impede or affect the way water flows.

10

## II.     Subject Matter Jurisdiction

"Federal courts are courts of limited jurisdiction and, as such, must have a statutory basis to exercise jurisdiction." *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002) (citation omitted). Federal district courts have original jurisdiction over all civil actions arising under the constitution, laws, or treaties of the United States or where there is diversity of citizenship. 28 U.S.C. § 1331; 28 U.S.C. § 1332. "A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974) (citation omitted). Since federal courts are courts of limited jurisdiction, there is a presumption against jurisdiction, and the party invoking federal jurisdiction bears the burden to prove it exists. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Here, subject matter jurisdiction exists because plaintiff brings this lawsuit under the FTCA, a federal statute. The court thus has subject matter jurisdiction under 28 U.S.C. § 1331 because this case arises under a law of the United States.

## III.    Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine dispute" about "any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When it applies this standard, the court views the evidence and draws inferences in the light most favorable to the non-moving party. *Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010). "An issue of fact is 'genuine' 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party' on the issue." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "An issue of fact is 'material' 'if

under the substantive law it is essential to the proper disposition of the claim' or defense." *Id.* (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

The moving party bears "both the initial burden of production on a motion for summary judgment and the burden of establishing that summary judgment is appropriate as a matter of law." *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (citing *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002)).  To meet this burden, the moving party "need not negate the non-movant's claim, but need only point to an absence of evidence to support the non-movant's claim." *Id.* (citing *Sigmon v. CommunityCare HMO, Inc.*, 234 F.3d 1121, 1125 (10th Cir. 2000)).

If the moving party satisfies its initial burden, the non-moving party "'may not rest on its pleadings, but must bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which it carries the burden of proof.'" *Id.* (quoting *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996)); *accord Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Anderson*, 477 U.S. at 248–49.  "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 670 (citing *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir. 1992)).

Summary judgment is not a "disfavored procedural shortcut." *Celotex*, 477 U.S. at 327. Rather, it is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.'" *Id.* (quoting Fed. R. Civ. P. 1).

## IV.   Analysis

Plaintiff brings a negligence claim against defendant under the FTCA.  Plaintiff asserts that he slipped and fell on ice that formed or remained on a sidewalk due to defendant's negligence.  The FTCA provides a limited waiver of the United States' sovereign immunity,

"'making the Federal Government liable to the same extent as a private party for certain torts of federal employees acting within the scope of their employment.'" *Lopez v. United States*, 823 F.3d 970, 975–76 (10th Cir. 2016) (quoting *United States v. Orleans*, 425 U.S. 807, 813 (1976)); *see also* 28 U.S.C. § 1346(b).  The FTCA holds the United States liable for negligent or wrongful acts or omissions to the same extent that a "private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  28 U.S.C. § 1346(b).

Defendant moves for dismissal or, in the alternative, summary judgment against plaintiff's FTCA negligence claim asserting three arguments:  (1) defendant is an abutting landowner who had no duty under Kansas law to remove naturally occurring ice and snow from a public sidewalk; (2) the Kansas statute of repose bars plaintiff's claim; and (3) the summary judgment facts fail to create a triable issue whether ice created by water that flowed from the northwest downspout was the proximate cause of plaintiff's fall.  The court addresses each argument, in turn, below.  It concludes that none of them will support summary judgment against plaintiff's negligence claim under the FTCA.

### A.  Duty of Abutting Land Owner to Clear a Public Sidewalk

In Kansas, a negligence claim requires:  (1) the existence of a duty, (2) breach of that duty, (3) injury, and (4) a causal connection between the duty breached and the injury sustained. *Smith v. Kan. Gas Serv. Co.*, 169 P.3d 1052, 1057 (Kan. 2007) (quoting *Schmidt v. HTG, Inc.*, 961 P.2d 677, 693 (Kan. 1998)).  Defendant asserts that it had no duty, as an abutting land owner, to remove natural accumulations of ice and snow from a public sidewalk next to its property.  Thus, to the extent plaintiff asserts a negligence claim based on defendant's failure to

remove naturally accumulating ice and snow, defendant argues that plaintiff's claim fails as a matter of law.

In a general sense, negligence claims present questions of fact for a jury to decide, not legal questions for the court to rule. *Elstun v. Spangles, Inc.*, 217 P.3d 450, 453 (Kan. 2009) (citation omitted). But the question whether a duty of care exists is a legal determination for the court. *Id.* (citing *Nero v. Kan. State Univ.*, 861 P.2d 768, 770 Syl. ¶ 1 (Kan. 1993)); *see also Smith*, 169 P.3d at 1057 (explaining that "[w]hether a duty exists is a question of law" (citation and internal quotation marks omitted)). If the undisputed facts establish that a defendant had no duty to act in a certain way toward a plaintiff, the court may grant summary judgment against plaintiff's negligence claim because, where no duty exists, defendant is not liable for negligence. *Elstun*, 217 P.3d at 453 (citing *Sepulveda v. Duckwall-Alco Stores, Inc.*, 708 P.2d 171, 173–74 (Kan. 1985)).

Defendant asserts that no duty exists here because our court has concluded that "Kansas follows the majority rule that a property owner, absent a statutory provision to the contrary, owes no duty to persons to keep abutting public sidewalks free from natural accumulations of ice and snow." *Collins v. Am. Drug Stores, Inc.*, 878 F. Supp. 182, 186 (D. Kan. 1995) (citing *Wilson v. Goodland State Bank*, 611 P.2d 171, 173 (Kan. Ct. App. 1980)). In *Collins*, the plaintiff produced no evidence that the ice on which he fell was created by anything other than natural accumulation. *Id.* And, Judge Lungstrum thus granted defendant's summary judgment motion because defendant owed no duty to plaintiff under Kansas law. Defendant urges the court to apply *Collins* here and grant summary judgment against plaintiff's negligence claim to the extent he alleges that he fell on naturally accumulated ice on a public sidewalk.

But, as plaintiff correctly asserts, *Collins* differs from the facts here.  Judge Lungstrum

held in *Collins* that Kansas law imposes no duty on an abutting land owner to remove natural

accumulations of ice and snow from public sidewalks "*absent a statutory provision to the*

*contrary.*"  *Id.* (emphasis added).  And, in *Collins*, "no municipal code or ordinance [imposed] a

duty on landowners to remove ice or snow from public sidewalks abutting their property."  *Id.* at

183.  But this is not so here.  The Bonner Springs Municipal Code provides:

> To allow for safe pedestrian travel, it shall be unlawful for a
> property owner immediately adjacent to a public sidewalk to fail to
> cause the removal of snow or ice accumulated within 48 hours
> after cessation of a snow and ice event.  If ice has accumulated to
> an extent to make removal difficult, the placement of sand or ice
> melt within the 48 hour period shall be deemed in compliance with
> the provisions of this Section.

Bonner Springs Municipal Code § 14-106(a) (2014),

http://ks-bonnersprings.civicplus.com/index.aspx?nid=328.[2]

Plaintiff asserts that this provision of Bonner Springs Municipal Code imposed a duty on

defendant to remove the ice that caused him to fall on the sidewalk.  Defendant responds by

citing *Hancock v. United States*, a case in which Judge Rogers held that a violation of the snow

removal ordinance in Junction City, Kansas "shall not be evidence of negligence per se" or "the

basis for a claim for damages."  No. 99-4050-RDR, 1999 WL 1100461, at *3 (D. Kan. Nov. 12,

1999).  In reaching this decision, Judge Rogers relied on the Kansas Supreme Court's opinion in

*Schlobohm v. United Parcel Service*, that explained:  "'Statutes or ordinances enacted to protect

the public at large, therefore, do not create a duty to individuals injured as a result of the

statutory violation and the doctrine of negligence per se is inapplicable.'"  *Id.* at *1 (quoting

*Schlobohm v. United Parcel Service*, 804 P.2d 978, 981 (Kan. 1991)).

---

[2]      The court cites the current version of the ordinance as it is available online.  Both parties
reference the same text of the ordinance in their briefs, and neither asserts that this ordinance was not part
of the Bonner Springs Municipal Code in effect in 2013, when plaintiff fell outside the Post Office.

Since, however, the Kansas Supreme Court has overruled *Schlobohm*.  More recently, in *Shirley v. Glass*, the Kansas Supreme Court described the above language from *Schlobohm* as a "sweeping statement" that "undermines the very purpose of statutory enactments" and is "not the correct way to analyze the duty requirement in a negligence action."  308 P.3d 1, 6 (Kan. 2013). Abrogating *Schlobohm*, the Kansas Supreme Court held, "the fact that a statute is intended to protect the safety of a broad category of citizens . . . does not preclude application of the statute to establish a duty of care in a tort proceeding."  *Id.* at 7.  Instead, for a statute to provide the duty of care to support a negligence claim, "[t]he injury resulting from an action that violates a statute must only be of the character that the legislature intended to protect the public against."  *Id.*

The plaintiff in *Shirley* appealed a district court order denying her negligence per se claim.  *Id.* at 5.  Plaintiff's petition asserted a negligence action against a pawn shop and its owners "based on their act of selling a firearm while knowing that the purchaser intended that another individual would take possession of that firearm and without performing a background check on the intended recipient of the firearm."  *Id.* at 5.  In discovery, plaintiff inserted a negligence per se theory, but was inconsistent in the way she described the theory:  "At times, she presented negligence per se as a statutorily created private cause of action, but at other times she argued that negligence per se statutorily defines the standard of care in a negligence action." *Id.*  The Kansas Supreme Court concluded that plaintiff had not pleaded a negligence per se claim as a separate cause of action created by statute but, instead, she was asserting only a claim of "simple negligence" that relied on federal and Kansas statutes prohibiting the distribution of firearms to felons to define the standard of care.  *Id.* at 5–6.  The Kansas Supreme Court thus found it was "irrelevant" whether the statutes gave rise to a private cause of action because the statutory violation was not the basis for her claim.  *Id.* at 5.  Instead, the Kansas Supreme Court

considered whether plaintiff could use the firearm-transfer statutes to establish a duty of care in a negligence action, and concluded she could under the facts in that case. *Id.* at 6–7.

The Kansas Supreme Court inquired whether the firearm-transfer statutes "were intend[ed] to protect the class [of persons], even if it includes all members of society, from a particular kind of harm." *Id.* at 6–7. The court answered that question in the affirmative, concluding that "the Kansas statute prohibiting the sale of firearms to certain convicted felons is intended to protect the citizens of this state from violent crimes committed by those felons." *Id.* at 7. The Kansas Supreme Court thus held that plaintiff could use violations of the fire-arm transfer statutes to establish a duty and breach of duty to support her negligence claim. *Id.*

Turning to the summary judgment facts presented here, the court relies on *Shirley* to determine if plaintiff may use § 14-106(a) of the Bonner Springs Municipal Code to define the duty of care defendant owed to plaintiff. *See Corporan v. Wal-Mart Stores E., LP*, No. 16-2305-JWL, 2016 WL 3881341, at *5 (D. Kan. July 18, 2016) (applying the rule from *Shirley* and holding that plaintiff could rely on the federal Gun Control Act "to establish the duty of care and a violation of that statute may be used by plaintiff to establish a breach of duty" in a negligence action); *see also Neuer v. Dental Res. Sys., Inc.*, No. 14-2319, 2015 WL 4634044, at *8 (D. Kan. July 27, 2015) (applying the rule from *Shirley* and holding that a federal statute that protected consumers "imposed a duty on defendants sufficient to give rise to" a negligence claim).

Defendant accuses plaintiff of asserting evolving legal theories such that he has transformed his claim into one of negligence per se. Doc. 80 at 23. The court disagrees with this characterization. Plaintiff's legal claims, as described in the Pretrial Order, are ones for ordinary negligence. *See* Doc. 69 ¶ 4.a. Thus, like the Kansas Supreme Court in *Shirley*, the court here

need not decide whether a violation of the Bonner Springs Municipal Code supports a negligence per se claim or creates a private right of action.  Plaintiff asserts no such claims here.

Instead, the court must consider whether the purpose of § 14-106(a) of the Bonner Springs Municipal Code includes protecting plaintiff from the injuries he sustained when he slipped and fell on an icy sidewalk in that city.  The court concludes that the ordinance is intended to protect citizens from this harm.  Indeed, the first line of the ordinance states its purpose:  "[t]o allow for safe pedestrian travel."  Bonner Springs Municipal Code § 14-106(a).  To accomplish the ordinance's purpose, it requires property owners immediately adjacent to public sidewalks to remove or treat snow or ice within 48 hours after a snow and ice event ends.  *Id.*  When he fell, plaintiff was a pedestrian traveling on a public sidewalk, and thus he falls within the class of persons the ordinance is designed to protect.  The court thus concludes that Kansas law imposed a duty on defendant to remove snow and ice from the public sidewalk adjacent to the Post Office consistent with the Bonner Springs Municipal Code.

Defendant also asserts that a separate provision in the Bonner Springs Municipal Code negates civil liability for a violation of the snow removal ordinance.  Section 4-503 of the Bonner Springs Municipal Code provides:

> That nothing in this ordinance or in the Property Maintenance Code 2015 Edition hereby adopted shall be construed to affect any suit or proceeding impending in any court, or any rights acquired, or liability incurred, or any cause or causes of action acquired or existing, under any act or ordinance hereby repealed as cited in Section 4-502; nor shall any just or legal right or remedy of any character be lost, impaired or affected by this ordinance.

Bonner Springs Municipal Code § 4-503 (2014).  This provision appears in Chapter IV ("Buildings & Construction"), Article 5 ("Property Maintenance Code").  Defendant asserts that Chapter IV is "functionally similar" to Chapter XIV ("Streets and Sidewalks")—the chapter in

18

which the snow removal ordinance, § 14-106(a), is recited.  Doc. 76 at 17.  Defendant asserts that it is "fundamentally inconsistent" to treat Chapter IV as negating civil liability while allowing Chapter XIV to create civil liability.  But the court does not read § 14-106(a) as creating civil liability in the form of a private cause of action.  As explained above, plaintiff does not assert such a claim.  Instead, the court only concludes that plaintiff may rely on § 14-106(a) to define the standard of care in a negligence case.  Also, defendant's argument that Chapter IV is "functionally similar" to Chapter XIV does not persuade the court that § 4-503 prohibits using other sections of the Code to define the standard of care in a negligence action.  It stands to reason that if the Bonner Springs City Council had meant to prohibit any provision in the Municipal Code from creating civil liability, it would have said exactly that.  But it did not.

Defendant next asserts that, even if it owed plaintiff a duty under the Bonner Springs Municipal Code, the undisputed facts establish that defendant committed no breach of its duty.  Defendant cites to plaintiff's testimony that he observed a "path" on the sidewalk on which he attempted to walk.  Defendant argues that the creation of this path "could have certainly been considered" compliance with the ordinance after the snowstorm on February 21, 2013, that produced nine and a half inches of snow fall in the Bonner Springs area.  Doc. 76 at 14.  But plaintiff disputes that defendant cleared the sidewalk of snow and ice—he specifically alleges that he fell on ice that defendant had not cleared from the sidewalk.  While a reasonable jury could believe defendant's version of the facts—that USPS employees cleared the sidewalk of snow and ice after the February 21 snow storm—a reasonable jury also could believe plaintiff's description of the sidewalk on the morning of his fall.  This creates a genuine issue of fact that the court cannot decide on summary judgment.

Defendant also concedes that the ordinance's use of the term, "snow and ice event," is "sufficiently broad to include significant thawing and refreezing of residual snow." Doc. 76 at 13. Defendant argues, though, that this interpretation creates 24-hour liability without giving the land owner an opportunity to treat the area. And, thus, defendant asserts, the ordinance imposes an unreasonable burden on land owners. The court disagrees. The plain language of the ordinance gives a land owner 48 hours to remove or treat ice on the sidewalk after a snow or ice event ends. And, from the undisputed facts here, the court cannot conclude as matter of law that defendant complied with this ordinance by removing snow and ice or treating the sidewalk within 48 hours of a "snow and ice event"[3]—which could include the melting and refreezing of snow from the piles lined up along the building. Indeed, USPS employee Matthew Lowe testified that he did not put ice melt on the sidewalks either on Saturday or Sunday before plaintiff's fall on Monday, February 25, 2013, even though he had worked that Saturday. From these facts, a reasonable jury could conclude that defendant breached its duty of care to plaintiff by failing to comply with the Bonner Springs Municipal Code. A reasonable jury also could reach the opposite conclusion. Indeed, the temperatures rose above freezing on Sunday, February 24, which could have contributed to melting snow conditions on a day when the Post

---

[3]         Defendant also argues that the law imposes no duty on it to remove ice from melting snow piles. But, in three of the cases defendant cites to support this argument, the land owners had no duty to remove naturally accumulating snow and ice in the first place and, unlike this case, no statute or ordinance existed that required the land owner to remove snow and ice from a public sidewalk. *See Lain v. Johnson Cty. Comm. Coll.*, No. 13-CV-2201, 2013 WL 4052924, at *3 (D. Kan. Aug. 12, 2013) (holding that defendant was immune from liability under the Kansas Tort Claim Act because plaintiff slipped on ice that was the result of natural weather conditions and not caused by any affirmative act of defendant); *Owoyemi v. Univ. of Kan.*, 91 P.3d 552, 2004 WL 1373305, at *3–4 (Kan. Ct. App. June 11, 2004) (unpublished table opinion) (same); *see also LaFond v. United States*, 781 F.2d 153, 154 (8th Cir. 1986) (applying Minnesota law and holding that defendant had no duty to remove ice that formed on a sidewalk from melting snow piles because melting snow is a natural cause of icy conditions, not an artificial one for which defendant could be liable). The fourth case that defendant cites differs from the summary judgment facts here because the court concluded after a bench trial that the landowner had taken steps to comply with the city snow removal ordinance and committed no positive wrongful act that caused plaintiff's injuries. *Valente v. United States*, 264 F.2d 800, 802 (6th Cir. 1959) (applying Ohio law).

Office was closed.  And, when plaintiff fell on Monday morning, defendant still was within the ordinance's 48-hour window to treat the icy conditions.  Thus, a jury could conclude that defendant complied with the ordinance when Mr. Lowe treated the sidewalk after plaintiff's fall.  But, at this stage, the summary judgment record, when viewed in plaintiff's favor, presents genuine issues of fact whether defendant breached the duty it owed to plaintiff.  The court cannot decide this issue as a matter of law, and, thus, it must deny defendant's motion for summary judgment on this issue.[4]

### B.  Statute of Repose

Defendant next argues that the statute of repose bars plaintiff's negligence claim to the extent he asserts that the northwest downspout was the source of the water that created an artificial accumulation of ice on the sidewalk where plaintiff fell.  Defendant argues that the northwest downspout has been in the same place since at least 1981 and that it has discharged water in the same manner for that entire time.  Thus, defendant contends, plaintiff cannot base his claim on the condition of the northwest downspout because it has been in place for more than 10 years, longer than the time period established by the statute of repose.

The Kansas statute of repose bars negligence claims that are premised on acts that occurred more than 10 years before the initiation of a lawsuit.  Kan. Stat. Ann. § 60-513(b)

---

[4]        Plaintiff also asserts that defendant owed a duty to plaintiff under the Supervisor's Safety Handbook and the Post Office lease which includes provisions about defendant's obligations to remove snow and ice from the Post Office premises.  But plaintiff cites no law to support its arguments that these provisions recognize a duty sufficient to support a negligence claim under Kansas law.  It is true that "'[a]n affirmative legal duty may be created by statute, contractual relationship, status, property interest, or some other special circumstance.'" *Wunder v. Elettric 80, Inc.*, No. 13-4014-KGS, 2015 WL 5730146, at *4 (D. Kan. Sept. 30, 2015) (quoting *Madison ex rel. v. Babcock Ctr., Inc.*, 638 S.E.2d 650, 656–57 (S.C. 2006)).  But "[n]either industry standards nor entity-specific practices are generally treated as conclusive in establishing a 'reasonable duty.'" *Estate of Belden v. Brown Cty.*, 261 P.3d 943, 964 (Kan. Ct. App. 2011) (quoting *Madison*, 638 S.E.2d at 659).  "They are, however, instructive." *Id.* (citing *Madison*, 638 S.E.2d at 659).  Plaintiff provides no basis for concluding that either the handbook or the lease created a duty that defendant owed to plaintiff under Kansas law, and thus the court declines to find one under the facts here.

provides that tort actions "in no event shall . . . be commenced more than 10 years beyond the time of the act giving rise to the cause of action." Kan. Stat. Ann. § 60-513(b). The Kansas Supreme Court has explained that the statute of repose "usually runs from an act of a defendant" and "abolishes the cause of action after the passage of time even though the cause of action may not have yet accrued." *Harding v. K.C. Wall Prods., Inc.*, 831 P.2d 958, 967 (Kan. 1992).

Defendant argues that the northwest downspout and the drainage on that side of the building have existed in the same position for more than 10 years. USPS employees have described the drainage issues and the icy conditions on the sidewalk as ongoing problems that have lasted for more than ten years. Defendant contends that the USPS has made "no meaningful alteration" to the drainage system since the building was constructed. And, thus, defendant asserts, the statute of repose bars plaintiff's claim because the conditions giving rise to the claim have existed for more than 10 years. Plaintiff disagrees. Plaintiff asserts that the USPS has made changes to the northwest downspout and drainage on that side of the building that render the statute of repose inapplicable.

First, plaintiff points to the black downspout that was installed on the rear of the building after OIC Alletta Dickson reported icy conditions on the sidewalk in 2011. Although OIC Roy Sanderson testified that the installation of the black downspout did not correct the problem, the undisputed facts show that the drainage conditions on the northwest corner of the building have not existed in the same manner for more than 10 years, as defendant contends.

Second, the summary judgment facts establish that the curb running between the Post Office's rear parking lot and the East Second Street sidewalk was shortened to allow water to drain out of the rear parking lot, across the sidewalk, and into the street.[5] But the summary

---

[5]     Defendant asks the court to disregard the curb modification as a source of liability because plaintiff did not disclose this factual contention in the Pretrial Order. Defendant asserts that the first time

judgment record is unsettled about when this alteration to the curb occurred.  One USPS employee testified that the curb was changed two or three years ago.  OIC Roy Sanderson initially testified that he could not remember when the curb was modified, but later agreed that the change happened while he served as the OIC at the Post Office.  Plaintiff's expert claims that the change was made in 2012, but the summary judgment record contains no facts to support this date.  On this record, a genuine issue exists whether the drainage conditions on the northwest side of the building changed within the last 10 years.

Because a reasonable jury could conclude from the facts here that defendant made changes to the northwest downspout and the drainage conditions on that side of the building within the last 10 years, the statute of repose does not bar plaintiff's negligence claim to the extent he alleges that he slipped on ice that was created by water draining from the northwest downspout onto the sidewalk.

### C.  Triable Issue of Proximate Cause

Finally, defendant moves for summary judgment against plaintiff's negligence claim because, it contends, plaintiff cannot establish that his fall was caused by ice that formed from water flowing through the northwest downspout.  Plaintiff concedes that he does not know if he fell on ice that was created by:  (1) water that had emptied from the downspouts onto the sidewalk and had frozen, or (2) water from the melting snow piles along the sidewalk that had frozen.  Defendant argues that it had no duty to remove ice that was formed by the second method, and, because plaintiff cannot tell how the ice was formed, he cannot establish causation

---

plaintiff disclosed this theory was on March 25, 2016, when he served his amended expert opinion.  But the record shows that plaintiff's expert discussed the curb modifications as a source of liability during his deposition on January 11, 2016.  Doc. 79-14 at 18–19, 59, 101–103.  And he explained that he had intended to include this information in an amended report because he learned about the curb modifications from OIC Roy Sanderson's deposition testimony given on October 23, 2105.  The court declines defendant's invitation to disregard this factual contention.

under the first method.   But, as explained above, the court rejects defendant's argument that it had no duty to remove ice from the public sidewalk, including ice that formed from melting snow piles.  And, the court agrees with plaintiff.  The summary judgment facts present triable issues whether plaintiff slipped on ice that was formed from water that flowed through the downspouts, into the rear parking lot, and across the sidewalk.

The undisputed facts establish that the water draining from the northwest downspout is intended to follow the nine inch curb on the rear parking lot and then flow across the sidewalk where the level of the rear parking lot and curb meet about eight and a half feet from the downspout.  USPS employees testified about recurring problems with ice accumulation on the sidewalk from water exiting the northwest downspout.  OIC Alletta Dickson reported problems in January 2011.  She described the water flowing from the northwest downspout into the rear parking lot, flowing along the curbing between the sidewalk area and the rear parking lot, and crossing over the sidewalk area near the driveway entrance to the rear parking lot.  She said the problem with the ice would occur near the driveway to the rear parking lot.  Also, one month after plaintiff's fall, OIC Roy Sanderson submitted a report to the USPS requesting repair of the gutters on the rear of the Post Office because water was collecting near the northwest downspout in the parking area, creating a slipping hazard.

Defendant asserts that plaintiff cannot establish that water draining from the northwest downspout created the ice on which he fell because plaintiff did not look at the northwest downspout on February 25 to determine if any water or ice was coming from it.  He also did not see a trail of ice leading from the downspout.  Defendant thus asserts that plaintiff presented no contemporaneous evidence implicating the downspout as the source of the ice.  The court disagrees.  A reasonable jury could infer from the facts—particularly the USPS employee

testimony about previous problems with the northwest downspout causing icy conditions on the sidewalk—that the ice on which plaintiff fell was created by water flowing from the northwest downspout, into the rear parking lot, and across the sidewalk.

Defendant also argues that the problems with the ice on the sidewalk occurred closer to the driveway to the rear parking lot, and not near the parking stall where plaintiff alleges he fell. Defendant contends that "[t]o get to where Plaintiff claims he fell, any water coming out of the downspout would have to travel eight (8) feet, in the opposite direction, to the edge of the retaining wall and then another eighteen (18) feet down the sidewalk. The ease at which this will be accomplished is dependent on the weather factors." Doc. 76 at 29–30. Defendant thus appears to concede that ice could have formed in this manner.

Defendant relies on a Wisconsin case to support its argument that plaintiff fails to present a triable issue of causation, but the facts in that case are different from the facts here. In *Walczak v. Kum & Go, LC*, the Wisconsin Court of Appeals affirmed summary judgment against a plaintiff's negligence claim based on a slip and fall outside of a convenience store. 740 N.W.2d 902, 2007 WL 2769249, at *1 (Wisc. Ct. App. Sept. 25, 2007) (unpublished table opinion). Plaintiff contended that she fell on ice that was formed by an improperly maintained rain gutter and downspout system. *Id.* Affirming the district court's summary judgment ruling, the appellate court concluded that plaintiff's negligence claim "suffer[ed] . . . from an utter lack of proof." *Id.* at 4. Plaintiff had not shown that the downspout could or did produce ice where she fell. *Id.* The downspout in question did not empty onto the sidewalk, but instead emptied into the parking lot in an area uphill and around the corner from where plaintiff alleged she fell. *Id.* The court found that plaintiff's only evidence of the source of the ice was her own opinion, not admissible evidence, and thus summary judgment was appropriate. *Id.*

25

In contrast, plaintiff here has offered more than his opinion that he slipped on ice that was formed by water draining from the northwest downspout.  When viewing the undisputed facts in the light most favorable to plaintiff—as the court must on summary judgment—the USPS employee testimony about previous problems with water drainage and icy conditions in the surrounding area coupled with defendant's acknowledgment that ice could have formed where plaintiff fell depending on the weather conditions creates a triable issue of fact.  Although the summary judgment facts do not establish—conclusively—that ice on the sidewalk was formed by water flowing from the downspout, the undisputed facts also do not foreclose this possibility.  As a consequence, the court must deny summary judgment.

## V.      Conclusion

For the reasons explained above, the court denies defendant's summary judgment motion.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant United States of America's Motion to Dismiss Complaint, or in the Alternative, Motion for Summary Judgment (Doc. 75) is denied.

**IT IS SO ORDERED.**

**Dated this 3rd day of November, 2016, at Topeka, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**